SRD/DSG USAO #20250349
hmg.6.22.25



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA** | * |
| v. | * CRIMINAL NO. JRR-25-194 |
| | * |
| **JAMES BRIAR,** | * (Conspiracy to Defraud the United States, 18 U.S.C. § 371) |
| Defendant | * |

******

## INFORMATION

### COUNT ONE
(Conspiracy to Defraud the United States)

The United States Attorney for the District of Maryland charges that:

At all times relevant to this Information,

### Background and Introduction

1. From at least 2012 until the present, Defendant **JAMES BRIAR** was employed as an Account Sales Representative at Company 1, an IT distributor headquartered in Reston, Virginia. **BRIAR** focused his efforts on distributing IT products to federal government end users, including to the United States Department of Defense and related entities. This included USG Agency 1, an agency of the Department of Defense located in Maryland.

2. USG Agency 1 regularly purchased IT solutions to operate its IT infrastructure. Such solutions, which consisted of both hardware and software products ("IT Products"), often totaled millions of dollars.

3. Co-Conspirator 1 was an on-site IT service provider at USG Agency 1. In Co-Conspirator 1's role as an on-site service provider, Co-Conspirator 1 cultivated close relationships

with USG Agency 1 employees who had authority over certain procurements. Co-Conspirator 1 also often learned confidential, non-public, inside information about upcoming procurements.

4. In addition to his role as an on-site contractor, Co-Conspirator 1 also owned Company 2, a value-added reseller ("VAR") located in Maryland that sold IT products to the Government.

5. Co-Conspirator 2 was a resident of Maryland and was employed as an information technology ("IT") salesman for Company 3 where he focused his efforts on selling IT products to federal government end users, including USG Agency 1.

6. Company 4 was an IT company with its principal place of business in San Jose, California. Co-Conspirator 3 was employed as a salesman for Company 4. Co-Conspirator 2 and Company 3 sold IT products manufactured by Company 4 to USG Agency 1.

7. In or around April 2020, **BRIAR,** Co-Conspirator 1, and their other co-conspirators agreed that another co-conspirator would submit bids as a front for Company 2, hiding Company 2's involvement from USG Agency 1. The co-conspirators further agreed to pay kickbacks to Co-Conspirator 1 and Company 2, utilizing Co-Conspirator 1's access to inside information and influence and in exchange for favorable treatment on procurements by USG Agency 1. Such conduct benefited **BRIAR**'s employer, Company 1, by expediting procurements and retaining OEMs and VARs as clients.

8. **BRIAR** caused these kickbacks to be paid to Co-Conspirator 1 and Company 2 through checks made by Company 1.

9. **BRIAR** learned about the process for paying these kickbacks from his supervisor and colleagues at Company 1.

10. **BRIAR** knew that Co-Conspirator 1 was employed as an on-site contractor at USG Agency 1 and that his involvement in procurements presented a conflict of interest.

11. **BRIAR** knew at the time he provided the kickback payments to Co-Conspirator 1 that such payments were prohibited.

## The Conspiracy

12. From at least as early as September 2020 and continuing through at least as late as September 2022, in the District of Maryland and elsewhere, the Defendant,

**JAMES BRIAR,**

did knowingly and willfully combine, conspire, confederate and agree with Co-Conspirator 1, Co-Conspirator 2, Co-Conspirator 3, and other co-conspirators known and unknown to the United States Attorney, to commit an offense against the United States, namely:

   a. to provide, attempt to provide, and offer kickbacks to Co-Conspirator 1 and Company 2, in exchange for favorable treatment on USG Agency 1's procurement of Company 4's products, which were sold by Co-Conspirator 2 and Company 3, and distributed by **BRIAR**'s employer, Company 1; and

   b. to include the amount of the kickbacks in the contract prices set between Company 3 and USG Agency 1, thereby increasing the amount that Company 3 charged the Department of Defense, contrary to Title 41, United States Code, Section 8702 and 8707.

## The Purpose of the Conspiracy

15. It was the purpose of the conspiracy for **BRIAR** and his co-conspirators to use Co-Conspirator 1's close relationships and access to inside information at USG Agency 1 to

3

improperly obtain favorable treatment on IT procurements that Company 3 sold to USG Agency 1, which included products made by Company 4, and which were distributed by Company 1.

*Manner And Means*

16. The manner and means by which the Defendant and his co-conspirators sought to accomplish the purpose of the conspiracy included, but were not limited to, the following:

   a. **BRIAR**, Co-Conspirator 2 and Co-Conspirator 3 provided kickbacks to Co-Conspirator 1 and Company 2 to influence USG Agency 1's award of IT procurements.

   b. **BRIAR**, Co-Conspirator 2 and Co-Conspirator 3 referred to these kickbacks as "rebates," "margin," and the "[Co-Conspirator 1] tax."

   c. Co-Conspirator 1 ensured that USG Agency 1 purchased Company 4's products, which were sold to USG Agency 1 by Company 3 and were distributed by Company 1.

   d. **BRIAR**, Co-Conspirator 2 and Co-Conspirator 3 increased the amount of Company 3's bid price to USG Agency 1 to include the kickbacks.

   e. Co-Conspirator 2 and Company 3 hid the kickback payments to Co-Conspirator 1 and Company 2 from USG Agency 1 by not identifying the payments on Company 3's invoices to USG Agency 1 even though the payments were included in the amount that USG Agency 1 paid Company 3.

   f. **BRIAR** coordinated the kickback payments by causing Company 1 to issue checks to Co-Conspirator 1 and Company 2.

g. Co-Conspirator 1 provided **BRIAR**, Company 1, Co-Conspirator 2, Co-Conspirator 3, Company 3, and Company 4 favorable treatment on USG Agency 1 procurements, including by: (i) convincing USG Agency 1 employees to purchase products manufactured by Company 4; (ii) ensuring that Co-Conspirator 2 and Company 3, were invited to bid on IT procurements; and (iii) providing confidential, non-public inside information about upcoming procurements, ensuring that Company 3 won the procurements, which were distributed to Company 3 by Company 1.

h. **BRIAR**, Co-Conspirator 2, Co-Conspirator 3, and Company 1, in exchange for this favorable treatment, paid kickbacks to Co-Conspirator 1 and Company 2 totaling approximately $1.9 million.

*Overt Acts*

17. In furtherance of the conspiracy and to accomplish its objects, the following acts were committed in the District of Maryland, and elsewhere:

a. On or about September 15, 2020, after coordinating with Co-Conspirator 1 regarding an upcoming procurement of IT products at USG Agency 1, Co-Conspirator 2 emailed **BRIAR** and asked, "Does this ring a bell with you?"

b. On or about September 16, 2020, **BRIAR** emailed Co-Conspirator 1 and another co-conspirator regarding the upcoming procurement, requesting that Co-Conspirator 1 provide **BRIAR** with a "customer facing quote."

c. On or about September 17, 2020, after learning that Company 3, and not Company 2, would instead provide a customer facing quote, **BRIAR** emailed Co-Conspirator

5

2 non-public competitor cost information so that Co-Conspirator 2 would "know what the ceiling price is for the entire [order]."

d. On or about September 17, 2020, after the email exchange above, Co-Conspirator 2 emailed **BRIAR** requesting that he allocate profit to Company 3 and a kickback to Co-Conspirator 1, writing that he "[w]ant[ed] to be sure there's an equitable split between [Co-Conspirator 1] and [Company 3]."

e. On or about September 23, 2020, after USG Agency 1 awarded the procurement to Company 3, **BRIAR** emailed Co-Conspirator 1, thanking him regarding the procurement awarded to Co-Conspirator 2 and Company 3, "THANK YOU [Co-Conspirator 1]!!!! Team work makes the dream work!!!"

f. On or about March 25, 2021, following the coordination between **BRIAR**, Co-Conspirator 1, Co-Conspirator 2, and Co-Conspirator 3 regarding the amount of the kickback to be paid to Co-Conspirator 1, Company 1 included in a check to Company 2 a kickback payment of $443,282.

18 U.S.C. § 371.

GAIL SLATER
Assistant Attorney General

*/s/ Michael M. Sawers*
MICHAEL M. SAWERS
ZACHARY D. TROTTER
ELIZABETH H. FRENCH
Trial Attorneys
Antitrust Division
U.S. Department of Justice
Washington Criminal Section
450 5th Street, NW
Washington, D.C. 20530

Date: 7/1/2025

KELLY O. HAYES
United States Attorney

*/s/ Kelly O. Hayes*